IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOE HAND PROMOTIONS, INC. | : | Case No. 4:12-CV-01874 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | (Judge Brann) |
| | : | |
| LARRY W. TICKLE, JR., | : | |
| JASON R. LETTER, and | : | |
| CAFÉ BELLISIMO | : | |
| | : | |
| Defendant. | : | |

**MEMORANDUM**
March 17, 2014

Before the Court is Plaintiff's Motion for Default Judgment (ECF No. 13), Magistrate Judge William I. Arbuckle, III's Report and Recommendation (ECF No. 14) regarding that Motion, and Defendant Jason Letteer's[1] *pro se* letter on the record, which the Court construes as a motion to set aside default (ECF No. 16). Plaintiff filed a response to Letteer's letter (ECF No. 20) and Letteer submitted a letter in reply (ECF No. 21). For the reasons discussed, Letteer's default is removed for good cause, the Plaintiff's Motion for Default Judgment is denied without

---

[1] The Defendant's name in the Complaint and caption reads Jason R. Letter. In a subsequent letter, however, the Defendant asserts the accurate spelling of his surname is Letteer. See Jason Letteer Letter, Aug. 16, 2013, ECF No. 16.

1

prejudice, and Judge Arbuckle's Report and Recommendation is not adopted because it is moot in light of this decision.

**I.      BACKGROUND**

Plaintiff, Joe Hand Promotions, Inc. ("Joe Hand" or "Plaintiff"), commenced this action by filing a Complaint on September 19, 2012 (ECF No. 1). The Complaint alleges that the three Defendants, Larry W. Tickle, Jr., Jason R. Letteer, and Café Bellisimo, together doing business as "Daddy McFatty's," a tavern in Northumberland, Pennsylvania, unlawfully exhibited a television program without the appropriate license or legal authority to do so. The Plaintiff held the rights to broadcast the Program, namely the "Ultimate Fighting Championship 119: Frank Mir v. Mirko Cro Cop." The Plaintiff entered into sublicensing agreements with commercial entities throughout the United States, granting the sublicensees the right to publicly exhibit the Program for the benefit and entertainment of their patrons.

Plaintiff alleges that, on Saturday, September 25, 2010, investigator Jason Hannum observed the unlawful exhibition of the Program at the Defendants' establishment. The exhibition was unlawful because the Defendants did not possess the required sublicense, thereby violating the Cable Television Consumer Protection and Competition Act of 1992, 47 U.S.C. § 553, and the Federal Communications Act

of 1934, 47 U.S.C. § 605.[2]  Plaintiff also alleges a common-law claim of conversion.

Plaintiff filed certificates of service representing that service was made on Jason R. Letteer on January 22, 2013 (ECF No. 6); on Larry W. Tickle, Jr. on February 8, 2013 (ECF No. 9); and on Café Bellisimo on February 8, 2013 (ECF No. 10).  No Defendant filed a timely responsive pleading.  Consequently, the Plaintiff requested an entry of Default for each Defendant on May 10, 2013 (ECF No. 11), and the Clerk of Court entered Default as to Defendants Café Bellisimo, Jason R. Letteer, and Larry W. Tickle, Jr. on that date (ECF No. 12), pursuant to Federal Rule of Civil Procedure 55.

The Plaintiff then filed a Motion for Default Judgment as to all Defendants on July 2, 2013 (ECF No. 13).  The matter was referred to Magistrate Judge William I. Arbuckle, III, who issued a Report and Recommendation on the motion on August 8, 2013 (ECF No. 14).  Judge Arbuckle's report recommended default judgment be entered against all three defendants and calculated damages in accordance with the applicable statutes.

Before resolution of the Plaintiff's Motion for Default Judgment, Defendant Jason Letteer, *pro se*, filed a letter on the record (ECF No. 16).  The letter alleges

---

[2] Jurisdiction is proper under 28 U.S.C. § 1331.

that Defendant Letteer dissolved all business relations with Daddy McFatty's and the other Defendants in this case as of June 2006. Attached to the letter, Defendant Letteer included documentation of a notarized agreement, entered into on June 27, 2006, that purportedly dissolved business associations between Defendant Letteer and Defendants Tickle and Café Bellisimo. Pertinently, Letteer alleged the agreement removed him "from the liquor license and relinquish[ed] all rights in said business." Letteer's Letter, Ex. 1, Aug. 16, 2013, ECF No. 16.

Consequently, Defendant Letteer alleges he took no part in the business beyond June 2006, and is not liable for the activities of 2010 that are at issue in the present matter. The Court construes Defendant Letteer's letter as a motion that the entry of default against him be set aside for good cause under Federal Rule of Civil Procedure 55(c). See Liggon-Redding v. Estate of Sugarman, 659 F.3d 258, 265 (3d Cir. 2011) ("Pro se filings . . . must be liberally construed."). The Court then issued an Order to Show Cause requiring Joe Hand's reply to Letteer's letter (ECF No. 17).

Joe Hand filed a Response on March 5, 2014 (ECF No. 20). In addition to legal arguments, Joe Hand supplied the available public records concerning the Defendants, including Café Bellisimo's certificate of incorporation[3] and the

---

[3] The report from the Commonwealth of Pennsylvania Department of State regarding Café Bellisimo, Inc., certified by Carol Aichele, Secretary of the Commonwealth of Pennsylvania, indicates that the Articles of Incorporation filed on May 25, 2001 is the only document on file. Pl.'s Mot. Leave File Resp., Ex. 1, Mar. 3, 2014, ECF No. 18. The Secretary

corporation's liquor license. As of February 2, 2014, the current liquor license for the corporation lists Letteer as "Active" and identifies him as the "Vice-President, Treasurer, Stockholder and Director" of Café Bellisimo, Inc. Pl.'s Mot. Leave File Resp., Ex. 3, Mar. 3, 2014, ECF No. 18.

Letteer responded by letter, dated March 6, 2014 (ECF No. 21). Letteer fully maintains that his business relationship with Defendants Tickle and Café Bellisimo was dissolved as of 2006, and any currently existing records to the contrary are erroneous, presumptively as a result of his prior attorney's failures.

The Court considers the law in light of these facts and circumstances.

## II. DISCUSSION

### A. Motion to Set Aside Default Denied

Federal Rule of Civil Procedure 55(c) allows a court to "set aside an entry of default for good cause." The Court has discretion in determining "good cause" and evaluates a number of factors, of which the most pertinent considerations include: "(1) whether the plaintiff will be prejudiced; (2) whether the defendant has a meritorious defense; (3) whether the default was the result of the defendant's culpable conduct." U.S. v. $55,518.05 in U.S. Currency, 728 F.2d 192, 195 (3d Cir.

---

further certifies that Café Bellisimo remains an active corporation as of February 17, 2014. Id., Ex. 2.

1984).<sup>4</sup> The Defendant bears the burden to demonstrate good cause sufficient to set aside default.  See, e.g., Grow Tunneling Corp. v. Conduit & Found. Co., Inc., 96-cv-3127, 1996 WL 411658, * 2 (E.D. Pa. July 16, 1966).

It is firmly established that "default is generally disfavored and [courts] have long indicated [the] strong preference that cases be decided on the merits."  Ruhle v. Hous. Auth. of City of Pittsburgh, 54 Fed. Appx. 61, 62 n.1 (3d Cir. 2002); see also Lai v. Garrubbo, Capece, D'Arcangelo, P.C., 233 Fed. Appx. 201, 201 (3d Cir. 2007); Harad v. Aetna Cas. & Sur. Co., 839 F.2d 979, 982 (3d Cir. 1988).  "If there is any doubt as to whether the default should be set aside, the court should err on the side of setting aside the default and reaching the merits of the case."  Accu-Weather, Inc. v. Reuters Ltd., 779 F. Supp. 801, 802 (M.D. Pa. 1991) (McClure, J.) (citing Zawadski de Bueno v. Bueno Castro, 822 F.2d 416, 420 (3d Cir. 1987)).  Furthermore, where default has been entered, but default judgment not yet granted, courts consider a motion to set aside the entry default even more liberally than a motion to set aside default judgments.  See, e.g., Schartner v. Copeland, 59 F.R.D. 653, 656 (M.D. Pa. 1973) aff'd, 487 F.2d 1395 (3d Cir. 1973).

---

[4] The United States Court of Appeals for the Third Circuit also considers a fourth factor, "the effectiveness of alternative sanctions," when applicable. Emcasco Ins. Co. v. Sambrick, 834 F.2d 71, 73 (3d Cir. 1987).

1.  <u>Meritorious Defense</u>

The material question in considering setting aside default is whether Letteer can establish a meritorious defense. This is a critical issue because, without a meritorious defense, Letteer could not win at trial and there would be no purpose in setting aside default. <u>$55,518.04 in U.S. Currency</u>, 728 F.2d at 194–95.

"The showing of a meritorious defense is accomplished when 'allegations of defendant's answer, if established on trial, would constitute a complete defense to the action.'" <u>Id.</u> (quoting <u>Tozer v. Charles A. Krause Mill. Co.</u>, 189 F.2d 242, 244 (3d Cir. 1951)). While a defendant need not establish "beyond a shadow of a doubt" that he or she will prevail at trial, "it is not enough for a defendant to allege only simple denials or conclusory statements." <u>Ewing & Kreiser, P.C. v. Stephens</u>, 08-cv-5490, 2009 WL 1183347, *2 (E.D. Pa. May 1, 2009) (citing and quoting <u>$55,518.05 in U.S. Currency</u>, 728 F.2d at 195) (internal citations omitted). Nevertheless, a defendant must merely "show that it has a defense to the action which at least has merit on its face." <u>Accu-Weather, Inc.</u>, 779 F. Supp. at 803.

Letteer's purported defense, the allegations that he has "not been a part of this restaurant/bar since 2006," constitutes a facially meritorious defense sufficient to set aside default and discern the merits of the case. Letteer's Letter, at 1; <u>see also</u> <u>Accu-Weather, Inc.</u>, 779 F. Supp. at 803. The Plaintiffs claims under the applicable

federal statues require a "willful violation," which implies affirmative action by a defendant or defendant's agent. <u>See, e.g.</u>, 47 U.S.C. § 553(b); 47 U.S.C. § 605(e). If Letteer was not in fact involved in the business and did not receive direct or indirect commercial advantage or private financial gain from a willful violation of federal law, he may not be liable on Plaintiff's claims. Although the Plaintiff supplied strong evidence to the contrary, Letteer's claims, taken alone, are facially meritorious such that the merits of this case should be explored. <u>See, e.g.</u>, <u>Accu-Weather, Inc.</u>, 779 F. Supp. at 803; <u>see also</u> <u>Quaker Valley Sch. Dist. V. Emp'rs Mut. Liab. Ins. Co. of Wisconsin</u>, 96 F.R.D. 423, 424 (W.D. Pa. 1983) (resolving doubts about a meritorious defense in defendants favor, particularly in light of their *pro se* status).

    2.    <u>Prejudice to Plaintiff</u>

"Prejudice exists if circumstances have changed since entry of the default such that plaintiff's ability to litigate its claim is now impaired in some material way or if relevant evidence has become lost or unavailable." <u>Accu-Weather, Inc.</u>, 779 F. Supp. at 803. Requiring a plaintiff to litigate and establish the merits of its claim does not constitute prejudice in this context, "even though such a requirement may suggest impairment in common parlance." <u>Griffin v. Lockett</u>, 08-cv-01120, 2009 WL 179780, *2 (M.D. Pa. Jan. 26, 2009) (Rambo, J.).

In this case, it does not appear Joe Hand would suffer any such prejudice from setting aside the default as to Letteer, nor has Joe Hand alleged anything to this effect. Consequently, this factor weighs in favor of setting aside Letteer's default as well. See id.

3. Defendant's Delay

Although the default was a result of Letteer's dilatory conduct and negligent administration of his personal affairs, this factor is not sufficient to overcome the preference for resolution on the merits and lack of prejudice to the Plaintiff. The record indicates that Letteer was personally served with the Plaintiff's Complaint on December 22, 2012.[5] Letteer failed to respond. After Plaintiff's request that default be entered against the Defendants, Letteer was served with that document on May 10, 2013 (ECF No. 11). On July 2, 2013, Plaintiff filed a Motion for Default Judgment and served that document on Defendant Letteer (ECF No. 13). Letteer failed to respond.

Judge Arbuckle issued his Report and Recommendation regarding the Plaintiff's Motion for Default Judgment on August 8, 2013. Judge Arbuckle recommended default judgment be entered against all Defendants and calculated the

---

[5] Letteer was served at the address that he used on his August 16, 2013 Letter to the Court that is presently under consideration. See Summons, Jan. 30, 2013, ECF No. 6; Letteer's Letter.

appropriate damages. See Report Recommendation, Aug. 8, 2013, ECF No. 14. It was only after this point that Defendant Letteer filed his Letter, on August 16, 2013, more than three months after the entry of default.

In contrast to this prior behavior however, Letteer diligently replied to Joe Hand's Response to the Court's Order to Show Cause (ECF No. 17). Joe Hand filed its Response on March 5, 2014 (ECF No. 20) and Letteer mailed a letter to the Court dated March 6, 2014 that was filed March 11, 2014 (ECF No. 21).

Letteer's explanations for his prior delay are not entirely clear. Letteer complains of receiving confusing and erroneous communications from Joe Hand's attorney, and implies he believed he was not implicated in this law suit due to his prior attempt at dissolving business relations with the other Defendants. See Traverse, Mar. 11, 2014, ECF No. 21. Letteer's conduct, although dilatory for much of the litigation, does not exhibit a "[r]eckless disregard for repeated communications from plaintiffs and the court," as he asserted some reasons for his actions, dubious though they may be.[6] Hritz v. Woman Corp., 732 F.2d 1178, 1183 (3d Cir. 1984).

While the Court has little tolerance for neglect, delay, and disregard of

---

[6] Taking Letteer's assertions in the light most favorable to him, it does not appear his delay was the result of an intentional and deliberate trial strategy such that default should not be set aside. See, e.g., Wells v. Rockefeller, 728 F.2d 209, 213 (3d Cir. 1984).

correspondence, in light of the fact that the other factors weigh in Letteer's favor, his questionable delay does not prevent setting aside default. The Court does, however, expect exacting punctuality in all future matters.

### B. Default Judgment

In light of the fact that Letteer is now participating in this litigation and his liability has not yet been resolved, the Court must determine whether default judgment is proper as to Defendants Tickle and Café Bellisimo with respect to the United States Supreme Court's decision in Frow v. De La Vega, 82 U.S. 552 (1872), and Federal Rule of Civil Procedure 54(b) concerning judgment in litigation with multiple parties.

In Frow, the Supreme Court held that a court cannot enter final judgment on the merits separately against one of several defendants upon a joint charge against all, where the case is still pending as to the other defendants. Frow, 82 U.S. at 554. The plaintiff in the case filed a complaint against fourteen defendants charging eight of them with a joint conspiracy to defraud him out of land ownership. Frow, 82 U.S. at 552–53. Seven of those eight defendants filed an answer and litigated on the merits, but one defendant did not timely participate in the litigation; he defaulted, and the district court entered default judgment against him. Id. After proceeding on the merits with the other defendants, however, the court decided the

case adversely to the plaintiff and dismissed his complaint.  Id.  The plaintiff appealed.

United States Supreme Court Justice Joseph P. Bradley reversed the district court's decision writing that such an "incongruity" was "unseemly and absurd, as well as unauthorized by law."  Id. at 554.  Justice Bradley further elucidated:

> The true mode of proceeding where a bill makes a joint charge against several defendants, and one of them makes default, is simply to enter a default and a formal decree *pro confesso* against him, and proceed with the cause upon the answers of the other defendants.  The defaulting defendant has merely lost his standing in court . . . He can adduce no evidence, he cannot be heard at the final hearing.  But if the suit should be decided against the complaint on the merits, the bill will be dismissed as to all the defendants alike—the defaulter as well as the others.  If it be decided in the complainant's favor, he will then be entitled to a final decree against all.  But a final decree on the merits against the defaulting defendant alone, pending the continuance of the cause, would be incongruous and illegal.

Id.

The precise application of Frow has been questioned, particularly in light of Rule 54(b), and jurisdictions have construed its impact differently.[7]  See, e.g., Farszetta v. Turner & Newall, Ltd., 797 F.2d 151, 154 (3d Cir. 1986).  Interpreting

---

[7] See also Jefferson v. Briner, Inc., 461 F. Supp. 2d 430, 434–35 (E.D. Va. 2006) ("Although many jurisdictions have narrowly construed Frow to bar entry of a default judgment against one of several defendants only if the theory for recovery is one of true joint liability, the Fourth Circuit has interpreted Frow more broadly.")

Frow's application, the Third Circuit maintains "that if at trial facts are proved that exonerate certain defendants and that as a matter of logic preclude the liability of another defendant, the plaintiff should be collaterally estopped from obtaining a judgment against the latter defendant, even though it failed to participate in the proceeding in which the exculpatory facts were proved." Id. (citing Frow, 82 U.S. at 554). The essence of Frow is to prevent incongruent outcomes for defendants who are "similarly situated." In re First T.D. & Inc., Inc., 253 F.3d 520, 532 (9th Cir. 2001).

Furthermore, Federal Rule of Civil Procedure 54(b) provides:

> When . . . multiple parties are involved [in an action], the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay.

FED. R. CIV. P. 54(b).

The Third Circuit articulated pertinent factors district courts are required to consider in making the determination whether "there is no just reason for delay," including:

> (1) the relationship between the adjudicated and unajudicated claims; (2) the possibility that the need for review might or might not be mooted by future developments in the district court; (3) the possibility that the reviewing court might be obliged to consider the same issue a second time; (4) the presence or absence of

> a claim or counterclaim which could result in set-off against the judgment sought to be made final; (5) miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense, and the like.

Berckeley Inv. Grp., Ltd. v. Colkitt, 455 F.3d 195, 203 (3d Cir. 2006) (citing Allis-Chalmers Corp. v. Philadelphia Elec. Co., 521 F.2d 360, 363 (3d Cir. 1975)); see also Curtiss-Wright Corp. v. Gen. Elec. Co., 446 U.S. 1 (1980); Elliot v. Archdiocese of New York, 682 F.3d 213 (3d Cir. 2012).

Applying the Third Circuit's articulation of the Frow principle and considerations under Rule 54(b) to the current matter, there are just reasons to delay default judgment against Defendants Tickle and Café Bellisimo—entering judgment against them at this juncture presents the possibility of an incongruous result. The Defendants are similarly situated as to the claims against them, but may not be similarly situated as to their defenses. Nevertheless, if the Court were to enter default judgment against Defendants Tickle and Café Bellisimo, and the Plaintiff chooses to enforce the judgment against those only Defendants rather than continue with the burden of litigating against Defendant Letteer, the scenario presents fertile ground for injustice. If this scenario occurred and Defendant Letteer's asserted defenses are not in fact meritorious such that he is indeed liable, Defendant Letteer would escape liability, the other Defendants would unjustly bear the burden of

judgment, and the result would be incongruous.  See Frow, 82 U.S. at 554.  This scenario presents a just reason for the delay of judgment.  See Joe Hand Promotions, Inc. v. Clifton, 1:10-cv-02388, 2011 WL 4974005, *3 (E.D. Cal. Oct. 19, 2011) (finding default judgment not warranted when there was a possibility the responding defendant may be unable to establish her allegations that she was not an owner of the defendant establishment, such that both defendants would then be liable).

Considering the other 54(b) factors articulated by the Third Circuit, the adjudicated and unadjudicated claims are the same, but applied to different parties with presumably different defenses.[8]  See Berckeley Inv. Grp., 455 F.3d at 203.  There is presently no reason to believe that the need for review would be mooted by future developments in the district court.  See id.  There exists a possibility that a reviewing court might be obliged to consider the same facts or issue on two occasions, which is an outcome to avoid.  See id.  There is no claim or counter-claim that may result in set-off.  See id.  Although there is some delay to Joe Hand, the Plaintiff has not presented any evidence of solvency concerns or any material reasons imploring an expedited resolution of the issue.  See id.

---

[8] There is a scant possibility that Defendant Tickle may advance the same or a similar defense as Defendant Letteer, but in light of the parties's relationship and the corporate structure of Café Bellisimo, such an event is unlikely.

15

On balance then, the possibility of an incongruous result constitutes a just reason for delaying the entry of default judgment against the defaulting parties such that the Plaintiffs motion is denied at this juncture, without prejudice. See Frow, 82 U.S. at 554.

Finally, the Court does not adopt Judge Arbuckle's Report and Recommendation on Plaintiff's Motion for Default Judgment (ECF No. 14). Although thorough and cogent, it is now moot in light of subsequent events and the effect of this decision.

### III. CONCLUSION

For the foregoing reasons, Defendant Letteer's default is set aside for good cause, the Plaintiff's Motion for Default Judgment is denied, without prejudice, and Magistrate Judge Arbuckle's Report and Reccomendation is moot and therefore not adopted.

BY THE COURT:

s/Matthew W. Brann
Matthew W. Brann
United States District Judge